UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IMPAX LABORATORIES, INC.,

               Plaintiff,

         -against-

TURING PHARMACEUTICALS AG,

               Defendant.

**AMENDED**
**OPINION AND ORDER**[*]

16 Civ. 3241 (ER)

---

Ramos, D.J.

Impax Laboratories, Inc. ("Impax") brought this action for declaratory judgment and breach of contract against Turing Pharmaceuticals AG ("Turing")[1] on May 2, 2016, seeking to recover millions of dollars of rebate liability related to sales of the prescription drug Daraprim. Turing counterclaimed, asserting breach of the same contract and breach of the duty of good faith and fair dealing. On September 29, 2017, the Court granted in part and denied in part the parties' cross-motions for summary judgment. *See Impax Labs., Inc. v. Turing Pharms. AG*, No. 16 Civ. 3241 (ER), 2017 WL 4357893 (S.D.N.Y. Sept. 29, 2017). Impax has filed a motion for clarification and/or reconsideration. *See* Doc. 112. For the reasons discussed below, Impax's motion is GRANTED in part and DENIED in part.

---

[*] This Opinion and Order supersedes the Court's prior ruling of August 21, 2018, Doc. 124, pursuant to the request made without objection at the conference before the Court on October 12, 2018.

[1] Since the commencement of this lawsuit, Impax has merged with Amneal Pharmaceuticals LLC to form Amneal Pharmaceuticals, Inc. *See* Doc. 121. Turing has changed its name to Vyera Pharmaceuticals AG. *See* Doc. 123. For clarity, the Court will continue to use the names Impax and Turing.

## I.     BACKGROUND

### A.     Factual Background[2]

The Court assumes familiarity with the record and its prior opinion, which details the facts and procedural history of this case, and discusses here only those facts necessary for its disposition of the instant motion.  *See Impax Labs.*, 2017 WL 4357893.

In March 2015, as part of its acquisition of Tower Holdings, Inc. and Amedra Pharmaceuticals LLC ("Amedra"), Impax acquired the U.S. marketing rights for Daraprim.  *See* Am. Compl. (Doc. 34) ¶ 14.  Daraprim is an antiprotozoal medication mainly used to treat toxoplasmosis, a high risk and life-threatening disease for those affected by HIV, AIDS, cancer, and other diseases that weaken the immune system.  *Id.*  Impax also acquired certain inventory of Daraprim, labeled with Amedra's labeler codes, and assumed Amedra's obligations under its Medicaid rebate agreement with the Centers for Medicare and Medicaid Services ("CMS"), including certifying pricing data for sales of Daraprim to CMS.  *Id.* ¶¶ 16–17.

Shortly thereafter, Turing sent Impax a proposal to purchase the marketing rights for Daraprim.  On August 7, 2015, the two executed the Asset Purchase Agreement (the "APA") for the sale of the rights to Daraprim; the transaction closed on August 10, 2015.  Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s 56.1") (Doc. 83) ¶ 1; Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") (Doc. 94-1) ¶ 17.  As part of the transaction, Impax transferred inventory of 12,521 100-count bottles of Amedra-labeled Daraprim to Turing.  Pl.'s 56.1 ¶ 1.  Under the APA, the parties agreed that Turing would sell the inventory

---

[2] The factual background is drawn from the Amended Complaint (Doc. 34), Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s 56.1") (Doc. 83), Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") (Doc. 94-1), and the parties' supporting submissions.

of Amedra-labeled Darapim during a contractually prescribed timeframe, while Impax would remain responsible for certifying pricing data to CMS and paying Medicaid rebate liability to state Medicaid agencies. Pl.'s 56.1 ¶ 18; Def.'s 56.1 ¶ 34.[3]  The parties agreed that Turing would, in turn, reimburse Impax for certain Medicaid liabilities.  *See* Def.'s 56.1 ¶ 20–22; Memorandum of Law in Support of Impax's Motion for Summary Judgment ("Pl.'s Mem.") (Doc. 84), at 2; Declaration of Benjamin Naftalis in Support of Impax's Motion for Partial Summary Judgment (Doc. 79) Ex. 1 ("APA") § 9.2, Ex. E.

On August 11, 2015—one day after the close of the APA—Turing raised the price of Daraprim from Impax's price of $17.63 per pill to $750 per pill.  Pl.'s 56.1 ¶ 21.  On October 28 and 29, 2015, Turing provided Impax with its certification of pricing for the third quarter of 2015 ("Q3 2015")—including a quarterly average manufacturer price ("AMP") of $750—which Impax in turn certified to CMS.  Pl.'s 56.1 ¶¶ 24–25.  Based on that certification, state Medicaid agencies invoiced Impax over $19 million in Medicaid rebate liability with respect to Daraprim for Q3 2015.[4]  Pl.'s 56.1 ¶ 27.  On January 15, 2016, Impax sent Turing an invoice seeking reimbursement of approximately $17.8 million in Medicaid rebate liability for Q3 2015 (the "January Invoice").  *Id*. ¶ 28.

On February 1, 2016, Turing provided and Impax certified an AMP of approximately $719.40 for the fourth quarter of 2015 ("Q4 2015").  *Id*. ¶ 34.  State Medicaid agencies have invoiced Impax approximately $11.5 million in Medicaid rebate liability for Q4 2015.  *Id*. ¶ 36.

---

[3] Although Impax was responsible for submitting and certifying pricing data to CMS, Turing was responsible for providing Impax with that pricing data, along with a certification that the data had been reviewed and approved by Turing's certifier.  *Id.*

[4] According to Impax, had those units been invoiced to Impax based on Daraprim's pre-APA pricing, the total rebate liability for this period would have been just under $375,000.  Am. Compl. ¶ 30.

On February 16, 2016, Impax sent Turing a letter demanding that Turing pay the January Invoice.  Am. Compl. ¶ 34.  Instead of responding to the letter, on March 22, 2016, Turing sent Impax a memorandum from its law firm, Reed Smith, suggesting that Turing may have miscalculated the AMP, potentially resulting in an overstatement of the total Medicaid rebate liability invoiced to Impax by the states and Turing's share of that liability.  *See* Def.'s 56.1 ¶¶ 67–68.  By April 2016, Turing informed Impax that it had concluded that the Pricing Data it provided to Impax—and that Impax had certified to CMS—for Q3 and Q4 2015 was incorrect and that Impax should restate that Pricing Data.  *Id.*; *see also* Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") (Doc. 94), at 8–9.  In support of its position that the numbers submitted by Turing to CMS via Impax were erroneous, Turing pointed out that in Q3 and Q4 2015, state Medicaid agencies paid a total of $12.6 million for Daraprim, but invoiced $31.1 million in rebates, resulting in a windfall to state Medicaid agencies of $18.5 million. Def.'s Mem at 28 n.30.  Together with the restatement demand, Turing sent Impax a check for $150,222, which it stated reflected what it believed to be its share of the recalculated Medicaid rebate liability.  Def.'s 56.1 ¶ 70; Pl.'s 56.1 ¶ 33.

Separately, on March 1, 2016, Impax invoiced Turing for an additional $2.4 in Medicaid rebate liability reimbursement for Q3 2015 and Q4 2015 (the "March Invoice").  Pl.'s 56.1 ¶ 37. On April 19, 2016, Impax sent Turing a third invoice requesting an additional $10.2 million in previously unaccounted-for Q3 and Q4 2015 Medicaid rebate liability.  *Id*. ¶ 40.

Turing provided and Impax certified pricing data in April and July 2016, representing the first and second quarters of 2016.  Pl.'s 56.1 ¶¶ 43–44, 49.  Based on that pricing data and CMS's corresponding calculations, the state Medicaid agencies have invoiced Impax approximately $14

million in Daraprim Medicaid rebate liability.  *Id*. ¶¶ 45, 50–51.  In turn, Impax has billed Turing approximately $13 million in reimbursements for those quarters.  *Id*. ¶¶ 46, 52.

Since the close of the APA, state Medicaid agencies have invoiced Impax a total of $45,412,214.07 in Medicaid rebate liability with respect to Daraprim.  *Id*. ¶ 54.  Impax has invoiced Turing a total of $43,434,170.13 in reimbursements.  *Id*.  To date, Impax's invoices remain outstanding, because Turing maintains its position that it has paid all of its Medicaid rebate liability under the APA.  *See id.* ¶¶ 33, 39, 42, 48, 55.

### B.    Procedural Background

On October 14, 2016, Impax filed a motion for partial summary judgment on its claim that Turing breached the APA by failing to reimburse Impax for its share of Medicaid rebate liability (Claim 3) and Turing's counterclaims for breach of contract and the implied duty of good faith and fair dealing (Claims 1 and 2).  Doc. 78.  Turing filed its opposition to Impax's motion one month later, together with a cross-motion for summary judgment on all of Impax's remaining claims (Claims 1–4) and Turing's counterclaim for breach of contract against Impax (Claim 1).  Doc. 92.  The Court held oral argument on the parties' motions on September 26, 2017.

On September 29, 2017, the Court issued its Opinion and Order, granting in part and denying in part each party's motion.  *See* Doc. 110; *Impax Labs.*, 2017 WL 4357893, at *1. Specifically, the Court determined that Turing breached the APA because it was "contractually obligated to reimburse Impax for (1) all Medicaid Rebate Liability assessed on Daraprim sold into distribution channels before the Close but utilized after the Close, and (2) any incremental rebate liability that its price increase may have generated with respect to Daraprim utilized before the Close."  *Id.* at *13.  However, the Court found that Impax "failed to perform its own contractual obligations" and was therefore unable to recover on its breach of contract claim

5

against Turing.  *Id.* at \*16.  The Court determined that the APA required Impax to report pricing

data to CMS "if the data is accurate and complies with applicable rules and regulations."  *Id.* at

\*15.  Therefore, because Turing was ultimately responsible for payment of the rebates, Impax

could not refuse Turing's request to submit a pricing restatement to CMS by asserting that it had

subjectively reasonable concerns about the restatement; instead, it could do so only by showing

that Turing's proposed restatement did not comply with CMS rules and regulations.  *Id.*  The

Court further concluded that in its moving papers, Impax did not contend "that Turing's proposed

restatement [was] inaccurate or fail[ed] to comply with applicable rules and regulations," but

instead focused only on its concerns about the restatement.  *Id.*  The Court also rejected the sole

concrete objection Impax made to the objective propriety of the restatement, which involved the

appropriate accounting for Daraprim sold to Walgreens Specialty Pharmacy.  *Id.* at \*16.

On October 24, 2017, Impax moved for clarification and/or reconsideration.  *See* Doc.

112.  Impax seeks clarification or reconsideration of two issues:  first, it asks the Court to

confirm that its finding that Impax breached the APA in the final two quarters of 2015 does not

preclude Impax from recovering the Medicaid rebate liability it paid for Daraprim in subsequent

quarters.  *See* Memorandum of Law in Support of Motion for Clarification and/or

Reconsideration of the Court's September 29, 2017 Opinion and Order ("Pl.'s Recons. Mem.")

(Doc. 113), at 4–5.  Second, it asks the Court to confirm that because Impax cured its breach by

submitting the restatements for Q3 and Q4 2015, it can recover the Medicaid rebate liability it

paid for Daraprim in those quarters as well.  *Id.* at 5–9.[5]  Finally, and in the alternative, it asks the

Court to reconsider its findings that Impax's breach was material and that Impax breached the

APA in the first instance.  *Id.* at 9–18.

---

[5] As of April 30, 2018, Impax has submitted those restatements to CMS.  *See* Doc. 121.

## II.      LEGAL STANDARD

Rule 6.3 of the Local Civil Rules for this District provides for reconsideration of a court's order on a motion only where the court has overlooked controlling decisions of law or factual matters that were "put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."  *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)); see also S.D.N.Y. Local Civ. R. 6.3.  Under such circumstances, a motion for reconsideration may be granted "to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted).  "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  Local Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."  *Mikol*, 554 F. Supp. 2d at 500 (internal quotation marks omitted) (quoting *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001)).  "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied."  *Id.* (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  Whether to grant or deny a motion for reconsideration lies within the sound discretion of the

district court.  *Premium Sports Inc. v. Connell*, No. 10 Civ. 3752 (KBP), 2012 WL 2878085, at

*1 (S.D.N.Y. June 11, 2012) (citing *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

Rule 60(a) of the Federal Rules of Civil Procedure also allows a court to clarify a

judgment.  Under that rule, a court may provide "clarification and explanation, consistent with

the intent of the original judgment."  *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity

Comm'n of Nassau Cty., Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (quoting *Garamendi v.

Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012)).  Orders that clarify a judgment should "add

certainty to an implicated party's efforts to comply with the [original] order" or "provide fair

warning as to what future conduct may be found contemptuous."  *N.A. Sales Co. v. Chapman

Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984).  However, Rule 60(a) "does not allow a court to

make corrections that, under the guise of mere clarification, reflect a new and subsequent intent

because it perceives its original judgment to be incorrect."  *Consumer Fin. Prot. Bureau v. Sprint

Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017) (quoting *L.I. Head Start Child Dev. Servs., Inc.*, 956

F. Supp. 2d at 410)).  Therefore, the distinction between an error that may be clarified under Rule

60(a) and one that must be "reconsidered" under Rule 59 and Local Rule 6.3 is that "a correction

under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the

record to reflect the adjudication that was actually made."  *Id.* (quoting *Dudley ex rel. Estate of

Patton v. Penn-Am. Ins. Co.*, 313 F.3d 662, 672 (2d Cir. 2002)).

## III.   DISCUSSION

As an initial matter, the Court finds that it must consider each of Impax's arguments

under the standard for reconsideration rather than clarification.  The Court granted summary

judgment in Turing's favor on Impax's claim for breach of contract; Impax now asks the Court to

clarify that it may recover damages from Turing based on Turing's failure to reimburse Impax for

Medicaid rebate liability.  Such a finding would necessarily "alter the substantive rights of the parties" because the Court's prior ruling granted final judgment in Turing's favor on that claim. *See Impax Labs.*, 2017 WL 4357893, at *16.  Therefore, the Court will consider Impax's four arguments—that Impax did not breach the APA, that Impax may cure its breach of the APA, that Impax's breach of the APA was not material, and that Impax is entitled to full reimbursement for quarters in which it did not breach the APA—under the reconsideration standard.

### A.       Whether Impax Breached the APA

Impax argues that the Court should reconsider its finding that Impax breached the APA. Pl.'s Recons. Mem. at 15.  As an initial matter, although Turing addressed Impax's arguments on its opposition, *see* Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration ("Def.'s Recons. Mem.") (Doc. 116), at 4–6, Impax did not mention the issue in its reply papers. Thus, Impax may have abandoned this argument.  *See Williams v. N.Y. State Unified Court Sys. Office of Court Admin.*, No. 16 Civ. 2061 (VSB), 2017 WL 4402562, at *6 n.6 (S.D.N.Y. Sept. 30, 2017); *Persh v. Petersen*, No. 15 Civ. 1414 (LGS), 2015 WL 5326173, at *6 (S.D.N.Y. Sept. 14, 2015).

Second, Impax now argues that it initially took the position that the restatement of pricing data "was objectively contrary to law."  Pl.'s Recons. Mem. at 16.  The Court disagrees.  While it is true that Impax occasionally referred to the restatement as unreasonable or inappropriate, at oral argument, the Court directly asked counsel whether the test Impax suggested was subjective or objective, *see* Declaration of Daniel H. Weiner in Opposition to Plaintiff's Motion for Reconsideration (Doc. 117) Ex. 1 (Transcript of September 26, 2017 oral argument ("Tr.")) at 32:16–20; counsel replied "I'm not sure how [recertification] could be decide[d] other than us making the judgment."  Tr. at 33:24–25.  In its brief in support of summary judgment, Impax's

subsection on the reasonableness of the restatement was titled "the APA does not require Impax to

take an action it reasonably believes is contrary to law." *See* Pl.'s Mem. at 21.

Third, although Impax now claims to argue that the restatement was objectively

unreasonable, it recycles its argument that what made the proposed restatement improper was

Impax's belief that the restatement was improper.  Pl.'s Recons. Mem. at 16–17.  Impax argues

that its subjective concerns make restatement objectively improper, because a restatement may

only be lawfully made if the party submitting it attests to its reasonableness and accuracy.  *Id.*  But

this Court already held that Impax's concerns, *even if reasonable*, were not a sufficient basis to

refuse restatement under the APA because Impax is required to restate pricing data if the

restatement otherwise complies with Medicaid rules and regulations.  *Impax Labs.*, 2017 WL

4357893, at *14–15.  As in its summary judgment motion, Impax continues to raise primarily

atmospheric concerns about the restatement and failed to provide the court with evidence that the

restatement violated Medicaid rules and regulations.  *See* Pl.'s Recons. Mem. at 17.[6]  Impax,

therefore, has not shown that the Court overlooked any controlling law or facts that would entitle

it to reconsideration on the issue of its breach of contract.

### B.    Impax's Ability to Cure Its Breach

Impax argues that the Court should reconsider its decision in light of the fact that it has

now provided CMS with the certified price restatement, which Impax argues cures its breach of

the APA.  *See* Pl.'s Recons. Mem. at 5; Doc. 121.

Impax, here, presents one key factual matter the Court did not address on its initial

summary judgment briefing.  Specifically, Impax informs the Court that it was lawfully able to

---

[6] For example, Impax points to the fact that one of Turing's certification agents, who was not involved in the recertification process, "literally laughed out loud" when he was told about the restatement.  *Id.*  Impax also argues that the Court did not consider whether CMS would accept the restatement—but presents no actual evidence to show that CMS would reject the restatement on the basis that it was contrary to Medicaid rules and regulations.  *Id.*

restate the price of Daraprim for Q3 and Q4 2015 until October 30, 2018 and January 30, 2019, respectively.  *See* Pl.'s Recons. Mem. at 6.  Impax filed both restatements on April 30, 2018.  *See* Doc. 121.

But the reason why the Court did not address the possibility of Impax's cure on summary judgment was that Impax chose not to provide the Court with this information.  Impax argues that the Court "had no occasion to address the possibility of such a filing in its [original] decision," and should now reconsider its grant of summary judgment to Turing in light of the filing.  Pl.'s Recons. Mem. at 6.  Turing does not dispute that the filing was timely made under CMS rules; rather, it argues that the restatement should not alter the Court's initial decision that Impax breached the APA and is therefore unable to recover from Turing.  *See* Doc. 123.

Reconsideration is generally only appropriate where a court overlooked factual matters that were "put before it on the underlying motion."  *Mikol v. Barnhart*, 554 F. Supp. at 500; *see also Brown v. Barnhart*, No. 04 Civ. 2450 (SAS), 2005 WL 1423241, at *1 (S.D.N.Y. June 16, 2005) ("[T]he moving party may not advance new facts, issues, or arguments not previously presented to the Court." (internal quotation marks and citation omitted)).  Here, Impax admits that it did not previously inform the Court that it could still perform its restatement obligations under the APA.  *See* Pl.'s Recons Mem. at 7 ("This Court's Opinion does not address what would happen if Impax files Turing's requested restatement, because Impax's frontline position in this litigation has been that it was not required to make any such restatement . . . .").  Although Impax suggests that the Court could not have addressed this issue on summary judgment, it admits that it chose not to raise this factual issue because it was relying on a different legal argument at summary judgment.  *Id.*; *see also* Reply Memorandum of Law in Support of Plaintiff's Reconsideration Motion ("Reply Recons. Mem.") (Doc. 119), at 6 ("Once again, Impax's request

plainly concerns a matter that this Court's Opinion did not address, because in the summary judgment briefing Impax took the position that it was not required to submit Turing's restated pricing data in the first place.").   But a motion for reconsideration is not the appropriate vehicle to raise new arguments and present new facts that could have been presented earlier and were not.

Further, Impax has not shown that reconsideration based on the restatement would have reasonably altered the result before the Court.  Impax argues that, even assuming its breach was material, the restatement cures the breach and therefore its recovery against Turing is no longer precluded.  Pl.'s Recons. Mem. at 8.  Under New York law, a breach of contract gives rise to damages, but it will excuse the other party's nonperformance or termination if the breach was material and the breaching party failed to cure within a reasonable time.  *Cary Oil Co., Inc. v. MG Ref. and Mktg., Inc.*, 90 F. Supp. 2d 401, 408 (S.D.N.Y. 2000); *see also Sinco, Inc. v. Metro-N. Commuter R. Co.*, 133 F. Supp. 2d 308, 312 (S.D.N.Y. 2001) ("Fairness ordinarily dictates that the party in breach be allowed a period of time—even if only a short one—to cure the breach if it can. If the party in breach does cure within that period, the injured party is not justified in further suspension of its performance and both parties are still bound to complete their performances." (internal quotation marks and citations omitted)).  Thus, if Impax cured its breach in a reasonable period of time, its breach should not prevent its recovery from Turing.

But it is far from clear to this Court that Impax's attempted cure, made months after a final disposition of the case, was reasonably timely.  Impax cites to *Commerce Funding Corp. v. Comprehensive Habilitation Services*, a 2005 case from the Southern District of New York, and *Donovan v. Ficus*, a 2008 case from New York County Supreme Court; however, neither case is apposite.  *See* Pl.'s Recons. Mem. at 8.  In *Commerce Funding Corp.*, the court determined that a

breach of contract was not material because the breaching party eventually paid the amount owing under the contract, albeit thirteen months late. *See* No. 01 Civ. 3796 (PKL), 2005 WL 447377, at *15 (S.D.N.Y. Feb. 24, 2005). Here, however, Impax's restatement was made two years after it was requested, and done only after this Court's summary judgment decision finding that it had breached the contract. Similarly, in *Donovan v. Ficus*, a court issued a preliminary order requiring the breaching party to cure by providing limited shareholder access to its books and records. *See* 872 N.Y.S.2d 690 (Table), 2008 WL 4073639, at *1 (N.Y. Sup. Ct. Aug. 1, 2008). Several months later, the court determined that the shareholder plaintiff had not alleged a material breach of the shareholder's agreement based on several factors, including the curability of the breach. *Id.* at *10 (citing Restatement (Second) of Contracts, § 241). The issue, then, was the materiality of the breach, not whether a party may cure a breach after the conclusion of litigation determining the rights of the parties. To the latter question, Impax only offers that Turing did not argue "that the mere existence of litigation somehow prevents a party from curing" and adds, without any citation, "of course, it does not." Reply Recons. Mem. at 7. The Court finds these arguments insufficient on a motion for reconsideration.

## C.      Whether the Court Should Reconsider the Materiality of Impax's Breach

Next, Impax argues that the Court failed to consider whether Impax's breach was material or immaterial before granting summary judgment to Turing on the basis of Impax's breach. *See* Pl.'s Recons. Mem. at 10. Impax contends that its breach was immaterial, and therefore it substantially performed its obligations under the contract and was entitled to recover from Turing. *Id.* at *15.

Throughout the course of this litigation, Impax has maintained that it did not breach the APA, and has never before put forward an argument that regardless of its breach, it substantially performed under the APA. *See generally* Pl.'s Mem., Reply Memorandum of Law in Support of

Plaintiff's Motion for Summary Judgment (Doc. 102).  At oral argument, the Court specifically

asked counsel to reach this issue:

> One issue that neither party addressed, both of you being so [confident] in your respective positions this probably did not enter into your consideration, is what happens—New York law is such that in order to prevail on a breach of contract claim, you must claim that you yourself have performed.
>
> And so what happens in the event that the Court finds that with respect to one breach of contract claim your side prevails, but with respect to the other breach of contract counter or cross claim, your side loses?  So in other words, there's mutual breaches[.]

*See* Tr. at 2:7–17.  But Impax failed to address this question, and instead reiterated its claims that

it was not required to file the restatement, and therefore did not breach the APA:

> I want to just answer the Court's question and say I have spoken a lot about the restatement.  If the topic that bothered the Court is what if we didn't file a restatement when we should have, how does that work in the way of the contract?  I would say a couple of things, one, [I] don't think that we had to do anything until they pay. They're obligated to pay and they didn't. So that's one thing I would say about that.
>
> I legitimately do not believe, your Honor, the contract includes any provisions requiring us to restate, and I think the other side has asked you for an order of specific performance requiring us to file a restatement.  I don't know what to say about this topic except we have thrashed this at total length, and we would have filed it if we felt there was a legitimate way to do it.  We would have proceeded to do it.

Tr. at 38:3–16.  Impax now claims that it was Turing's burden to show that Impax's breach of the

APA was material.  Pl.'s Recons. Mem. at 12.  But on *Impax*'s breach of contract claim, it was

*Impax*'s burden to show that it substantially performed its own obligations under the contract.

*See LaRoss Partners, LLC v. Contact 911 Inc.*, No. 11 Civ. 1980 (ADS) (ARL), 2015 WL

2452616, at *6 (E.D.N.Y. May 21, 2015) (a plaintiff must show "the existence of a contract, the

plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual

obligations, and damages resulting from the breach" (citing *Canzona v. Atanasio*, 118 A.D.3d 837 (2d Dep't 2014))).  Impax made the strategic choice not to address the possibility that the Court would find it breached the APA; it cannot now avoid the consequences of that decision by setting forth, for the first time, arguments that the breach was immaterial.  Reconsideration is not a vehicle for taking a "second bite at the apple."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).  Impax's motion for reconsideration on the issue of materiality is therefore denied.[7]

###    D.    Turing's Responsibility for Post-2015 Medicaid Rebates

Impax seeks an order from this Court finding Turing responsible for reimbursing Impax on the Medicaid rebate liability Impax paid to state Medicaid agencies for Daraprim after 2015.  *See* Pl.'s Recons. Mem. at 4.  Impax argues that this result follows necessarily from the Court's conclusion that the APA requires Turing to pay Medicaid rebate liability for Daraprim utilized after the Close.  *Id.*  For quarters that were unaffected by Impax's refusal to submit a pricing restatement,[8] Impax argues, there is not even an allegation that Impax failed to substantially perform under the APA; therefore, there is nothing in the Court's order to preclude it from being reimbursed by Turing for Daraprim utilized in that timeframe.  *Id.* at 4–5.

Turing argues that Impax's breach of its reporting obligations for two quarters prevents Impax from recovering *any* Medicaid liability Turing owes with respect to Daraprim.  *See* Def.'s Recons Mem. at 10–13.  Turing points to cases in which New York courts have denied recovery

---

[7] Because the Court rejects Impax's arguments about the possibility of recovering damages of Turing's breach of the APA in Q3 and Q4 2015, it need not reach Turing's arguments about Impax's failure to mitigate its breach during those quarters.

[8] In other words, the time period beginning January 1, 2016.

to parties who failed to perform their own contractual obligations, specifically, *LaRoss Partners* and *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 980 F. Supp. 2d 400 (E.D.N.Y. 2013).

But in both cases, the contract dispute arose after the contract was terminated, and the focus of the disagreement between the parties was whether termination was accomplished appropriately.  *See LaRoss*, 2015 WL 2452616, at *5; *Nature's Plus*, 980 F. Supp. 2d at 405. That is plainly not the case here, however.  Turing continues to sell Daraprim under the APA and has, in fact, partially reimbursed Impax for certain Amedra-labeled Daraprim utilized in 2016. *See* Reply Recons. Mem. at 3.[9]  Since Turing's Medicaid reimbursement obligation arose each quarter in tandem with Impax's price certification obligation, the Court agrees with Impax this dispute is better conceptualized as a dispute arising under an installment contract.  *See* Pl.'s Recons. Mem. at 5 n.4; *see also Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*, 872 F. Supp. 103, 110 n.12 (S.D.N.Y. 1995) ("The relationship between the parties with respect to the annual submission and approval of the manuscript is not unlike that of parties to an installment contract."); *Cross & Cross Properties, Ld. v. Everett Allied Co.*, 886 F.2d 497, 501 (2d Cir. 1989) ("Since the parties thus intended their obligations to arise and be met on a year-by-year basis, we will weigh each year's obligations separately.").[10]  Neither party disputed that Impax substantially performed its obligations under the APA after 2015; yet, as the Court already found, Turing has continued to breach the APA by failing to reimburse Impax for Medicaid rebate liability attributable to Amedra-labeled Daraprim utilization post-Close.  *See Impax Labs.*, 2017 WL 4357893, at *13.  The Court overlooked the post-2015 period in its

---

[9] Indeed, under Turing's theory, Impax's breach of its reporting requirements in the final quarters of 2015 would essentially absolve Turing of any responsibility to continue fulfilling its obligations under the APA, as Impax would be prevented from ever bringing a breach of contract claim.

[10] Turing made a similar argument at oral argument with request to their own breach of contract, requesting that the Court "cabin it and apply it to [Impax's] performance or non-performance."  Tr. at 57:13–14.

original opinion, and therefore now GRANTS Impax's motion for reconsideration and GRANTS

summary judgment to Impax on Claim 3 (breach of contract) with respect to the time period

beginning January 1, 2016.

## IV.    Conclusion

For the reasons set forth above, Impax's motion is GRANTED in part and DENIED in

part.

It is SO ORDERED.

Dated:  November 6, 2018
        New York, New York

Edgardo Ramos, U.S.D.J.
United States District Judge